| | |
|---|---|
| STATE OF RHODE ISLAND<br>DISTRICT COURT | FOURTH DIVISION |
| STATE OF RHODE ISLAND,<br>ex rel TOWN OF CHARLESTOWN | |
| v. | Case No.:  41-19-00987<br>41-19-00989 |
| MUSQUANT NOMPASHIM NETAS<br>a/k/a IRVING JOHNSON | *Hearing Requested* |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**I. INTRODUCTION**

Musquant Nompashim Netas, who is known to the government as Irving "Rocky" Johnson, seeks to have the charges against him in the above-captioned cases dismissed, averring that the state does not have personal jurisdiction over him. Musquant is being prosecuted for conduct alleged to have happened on lands belonging to the Narragansett Indian Tribe, a federally recognized tribe. Whether the State has jurisdiction to enforce criminal law against tribal member on tribal land is a subject that has been litigated in the past. *See Narragansett Indian Tribe v. Rhode Island* 296 F. Supp. 2d 153, 177 (D.R.I. 2003), aff'd in part, rev'd in part, 407 F.3d 450 (1st Cir. 2005), reh'g en banc granted, judgment vacated sub nom. *Narragansett Indian Tribe v. Rhode Island*, 415 F.3d 134 (1st Cir. 2005), and on reh'g en banc sub nom. *Narragansett Indian Tribe v. Rhode Island*, 449 F.3d 16 (1st Cir. 2006), and aff'd sub nom.

RECEIVED
FEB 22 2023
U.S. DISTRICT COURT
DISTRICT OF R.I.

*Narragansett Indian Tribe v. Rhode Island*, 449 F.3d 16 (1st Cir. 2006). Mr. Johnson does not address that particular question in this briefing as it has no bearing on his motion.[1]

However, Mr. Johnson is *also* a member and beneficiary of the Ninigret Nehantick Nahaganset Tribal Trust ("NNN" or "Tribal Trust,") a tribe that is not formally recognized by the United States Government, but instead has established its formal identity as a sovereign nation utilizing trust mechanisms drawing on international law, specifically the Hague Convention. Through this trust mechanism, Mr. Johnson and the Tribal Trust assert Original Indian Claim over the same land that the State of Rhode Island identifies as the Tribal Lands of the NIT. Not only is the NNN unrecognized by the United States federal government; but unlike the NIT, it has no treaty, memorandum of understanding, or agreements with the government allowing for enforcement of state law on its land. As an aboriginal or indigenous person whose tribe (or more specifically one of his tribes) does not allow for enforcement of state law on its land, Mr. Johnson asserts that this Court has no jurisdiction over him for the crimes alleged in the above-captioned cases.

## II. FACTUAL BACKGROUND

Since 1983, the Narragansett Indian Tribe has been designated a federally recognized Indian tribe. In that same year, Congress passed legislation affirming an agreement designating approximately 1,800 acres of land in Charlestown, Rhode Island to the NIT

---

[1] Nor is the question as settled as some would have it: "This is not to say, however, that in some context or set of facts yet to be tested, the State's authority to conduct invasive raids upon tribal land might not be so circumscribed by this Court. In other words, nothing in this opinion should be read to suggest that the State's ability to enter upon tribal land to enforce its criminal/regulatory laws is limitless, or that State authorities may act with impunity. It is not; and they may not." *Narragansett Indian Tribe v. Rhode Island* 296 F. Supp. 2d 153, 177 (D.R.I. 2003)., n. 34.

through a combination of purchase and transfer of State owned land. *See Narragansett Indian Tribe of Rhode Island v. Rhode Island, et al.*, 296 F. Supp. 2d at 161-163 for a detailed history.

Mr. Johnson has identified and been identified as a Narragansett Indian for his entire life. He has been an enrolled member of the NIT tribe since such formal designation began with the advent of federal recognition. In 2016, he filed with the South Kingstown Record of Deeds a notice, addressed to the Director of the Office of Tribal and Intergovernmental Affairs at the United States Department of Energy. The notice sets forth that the land in question is claimed by the Ninigret Nehantick Nahagansett Tribal Trust. EXIBIT A. Even as the NNN asserts an ownership claim to the lands however, the NNN Tribal Trust's position allows for simultaneous yet non-conflicting land by the NIT. [2]

On April 20, 2019 Mr.Johnson was on this, his ancestral land, for a tribal meeting of the NIT. He was arrested and charged by Charlestown Police for various offenses alleged to have taken place at that meeting. In a companion case, Mr. Johnson is charged with trespassing onto his ancestral land for maintaining a simple greenhouse and garden.

### III. STANDARD

Under Rhode Island law, personal jurisdiction is an absolute requirement in order for a court to adjudicate against any person: "A fundamental principle of procedural due process is that a court may not issue a judgment or order against a person in the absence of personal jurisdiction." *In re Stephanie B.*, 826 A.2d 985, 994 (2003). This guarantee is enshrined in the due process protections offered by the Fourteenth Amendment to the United States Constitution

---

[2] While this stance seems untenable under property law as practiced and interpreted in the United States, it is consistent with traditional native modes of governance or ownership that do not require or encourage a single defined owner of land.

and Article 1, Section 2 of the Rhode Island Constitution. *Gomez v. State*, PM-2007-3154 (R.I. Super., 2008).

It bears mention that Mr. Johnson's challenge to personal jurisdiction is *not* in any way related to the challenge to personal jurisdiction known as the "Sovereign Citizen" movement. First and foremost, that belief system originated in a context of racism and antisemitism, even though many of its present-day adherents may be unaware of its origins. *See* Southern Poverty Law Center, https://www.splcenter.org/fighting-hate/extremist-filed/ideology/sovereign-citizens-movement, last viewed June 5, 2019.

### III. ARGUMENT

**a.  Musquant / Mr. Johnson Is a Citizen and Beneficiary of the Ninigret Nehantick Nahaganset Tribal Trust.**

The Ninigret Nehantick Nahaganset Tribal Trust exists "to provide sacred and cultural teachings necessary in rebuilding and perpetuating the ancient cultural ways while exercising [its citizen/beneficiaries'] right to self-determination and sustainable economic development required to sustain the bloodlines, human and cultural rights" of its membership. *See* Constructive and Public Notice, Exhibit A, at 3. The Tribal Trust bases membership of "members and families of the tribal clans" on ancestral records of North American Indian Rolls" maintained by the federal government, particularly the Bureau of Indian Affairs (BIA). *Id.* at 1. Its members include a number of individuals who have been disenfranchised or otherwise mistreated by the leadership of the Narragansett Indian Tribe, a leadership which operates outside its own internal constitutional parameters. *Id.*, at 3.

    b.    **The Ninigret Nehantick Nahaganset Tribal Trust, While Not Federally Recognized, Is Chartered Based on Principles of International Law.**

The Ninigret Nehantick Nahaganset Tribal Trust has neither sought nor received federal recognition. Its validation is in keeping with the United Nations Declaration of the Rights of Indigenous People ("UNDRIP"). The United States has not formally ratified UNDRIP; however the Department of State in 2011 announced its support for the Declaration. "U.S. support for the Declaration goes hand in hand with the U.S. commitment to address the consequences of a history in which, as President Obama recognized few have been more marginalized and ignored by Washington for as long as Native Americans—our First Americans. ." https://2009-2017.state.gov/s/srgia/154553.htm, last viewed June 5, 2019. In particular, three provisions of UNDRIP are relevant to this inquiry:

> **Article 3** "Indigenous peoples have the right to self-determination. By virtue of that right they freely determine their political status and freely pursue their economic, social and cultural development.
> **Article 4** Indigenous peoples, in exercising their right to self-determination, have the right to autonomy or self-government in matters relating to their internal and local affairs, as well as ways and means for financing their autonomous functions.
> **Article 37**, Indigenous peoples have the right to the recognition, observance and enforcement of treaties, agreements and other constructive arrangements concluded with States or their successors and to have States honour and respect such treaties, agreements and other **constructive** arrangements.

    c.    **Mr. Johnson Is a Member of Both the Narragansett Indian Tribe *and* the Ninigret Nehantick Nahaganset Tribal Trust.**

Federal policy is clear concerning prohibition of membership in more than one federally recognized Native American Indian Tribe. However, *there is no federal policy prohibiting membership in any non-federally recognized American Indian Tribe by a federally*

***recognized Native American.*** In fact, pursuant to the Indian Citizenship Act of 1924 (43 U.S. Stats. At Large, Ch. 233, p. 253 (1924)), there is no requirement that Indians relinquish citizenship in their own tribal nations in order to obtain US citizenship. Rather, in acknowledgment of the cultural norms and traditions of communal ownership of property and collective governance by and the aboriginal land rights of American Indian tribes, dual citizenship was allowed under the act.

The Tribal Trust, as a sovereign nation that has neither sought nor received formal recognition from the federal government, holds its own charter, constitution and order of governance. As such, the Tribal Trust and all of its citizen/beneficiaries are subject to the Tribal Constitution and Trust of the Tribe, and are afforded clear foreign jurisdiction when engaging with domestic entities, such as local police or courts. Mr. Johnson is within his lawful rights to maintain his dual-nationalism. As a direct descendant of the aboriginal people of the lands in question, Mr. Johnson and the Ninigret Nehantick Nahaganset Tribal Trust are subject to the provisions of treaties that were formed between the Crown and the Narragansett Chiefs during the 1600s, treaties that pre-dated the existence of the State of Rhode Island. The Supreme Court's recent ruling in *Herrera v Wyoming* 587 U.S. ___ (2019) is instructive here, particularly in its interpretation of an earlier case, *Minnesota v. Mille Lacs Band of Chippewa Indians* 562 U.S, 172, 207 (1999), as holding

> [T]hat the crucial inquiry for treaty termination analysis is whether Congress has expressly abrogated an Indian treaty right or whether a termination point identified in the treaty itself has been satisfied. Statehood is irrelevant to this analysis unless a statehood Act otherwise demonstrates Congress' clear intent to abrogate a treaty, or statehood appears as a termination point in the treaty.

### d. The Ninigret Nehantick Nahaganset Tribal Trust is a Sovereign Foreign Entity, And When Its Citizens Are On the (Foreign) Tribal Lands, the State Has No Criminal Jurisdiction Over Them.

It is axiomatic that a state has no criminal jurisdiction over a foreign citizen on their sovereign land. In this concept, case law follows common sense, beginning with basic notions of preemption, and the fact that any attempt by states to exercise jurisdiction over foreign criminal defendants in their foreign lands would intrude on an exclusively federal field:

> "There is, of course, no question that at some point an exercise of state power that touches on foreign relations must yield to the National Government's policy, given the concern for uniformity in this country's dealing with foreign nations that animated the Constitution's allocation of the foreign relations power to the National Government in the first place" *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413 (2003).

*See also:*

> Arthur M. Weisburd, Territorial Authority and Personal Jurisdiction 63 Wash. U. L. Rev. 377 (1985). "A basic principle of American law is that a state may not punish nonresidents for crimes that they commit in other states. (footnote: W. LAFAVE & A. SCOTT, HANDBOOK ON CRIMINAL LAW 118 (1972). This limitation may not apply if the defendant is a citizen of the state. *See Skiriotes v. Florida*, 313 U.S. 69 (1941).)

and *United States v. Belmont*, 301 U.S. 324 (1937): ("Governmental power over external affairs is not distributed, but is vested exclusively in the national government."). The principle is even stronger when assessing personal jurisdiction in the criminal context as opposed to civil. *See State v. Amoroso*, 975 P.2d 505 (Utah App., 1999): ("The rule is well-settled that civil "minimum contacts" analysis has no place in determining whether a state may assert criminal personal jurisdiction over a foreign defendant," and string cite, *Boyd v. Meachum*, 77 F.3d 60, 66 (2d Cir.1996) (federal constitutional requirements of civil personal jurisdiction do not apply in a criminal case); *State v. McCormick*, 273 N.W.2d 624, 628 (Minn.1978) (criminal cases "not subject to the same flexibility enjoyed by the more elastic rules governing extraterritorial jurisdiction

in civil cases"); *State v. Taylor*, 838 S.W.2d 895, 897 (Tex.App.1992) (citing *Ex parte Boetscher*, 812 S.W.2d 600, 602 (Tex.Crim.App.1991) ("A 'minimum contacts' analysis is not applicable to establish jurisdiction in criminal prosecutions.")); *Rios v. State*, 733 P.2d 242, 244 (Wyo.1987) ("the concept of minimum contacts ... has no application to criminal cases")).

The Supreme Court of the United States sets forth the rule even more emphatically in the context of Indian law, in this case the Indian Major Crimes Act, 25 U.S.C. §1152, describing the federal government's personal jurisdiction over Indians as "rooted in the unique status of Indians as 'a separate people' with their own political institutions. Federal regulation of Indian tribes, therefore, is governance of once-sovereign political communities."  *United States v. Antelope*, 430 U.S. 641, 646 (1977).

## IV. CONCLUSION

As set forth herein, this Court like any other state court lacks personal jurisdiction over Musquant Nompashim Netas, known as Irving "Rocky" Johnson. Mr. Johnson in addition to being a member of the Narragansett Indian Tribe is a citizen and beneficiary of the Ninigret Nehantick Nahagansett Tribal Trust, which is not recognized by the federal government, and exerts a claim of Original Indian title over the lands known as Tribal Lands of the NIT. While this claim co-exists with the NIT claim to ownership over the same lands, it does establish that Mr. Johnson is being prosecuted for alleged conduct as a foreign citizen on foreign land.

As long as the State maintains an attempt to exert jurisdiction over Mr. Johnson, it is not only intervening in a highly complicated relationship between different Indian entities,

and stepping into a clearly delineated federal field. Mr. Johnson respectfully asks this Court to avoid such error by granting his Motion to Dismiss this matter for lack of personal jurisdiction.

Dated: 6-6-19

MUSQUANT NOMPASHIM NETAS
a/k/a IRVING JOHNSON,
by his Attorney,
/s/ Shannah Kurland
Shannah Kurland
149 Lenox Avenue, Providence RI 02907
401.439.0518
skurland.esq@gmail.com
RI Bar #9186

CERTIFICATION

I hereby certify that on this 6th day of June, 2019, I delivered or caused to be delivered a true and accurate copy of the above motion to the Solicitor for the Town of Charlestown via hand delivery.

/s/ Shannah Kurland
Shannah Kurland