Page 37

1  properties all around it, even though there are
2  functions. They do hold functions and have offices
3  and so forth on the property.
4     Q.  Okay. And you used -- earlier you used
5  the phrase "concurrent jurisdiction" I think. Can
6  you -- is that something that you understand comes
7  out of a settlement agreement?
8     A.  I believe the terminology is in that
9  document, yes, but I -- I don't know it exactly.
10 I'd have to see the document again.
11    But it, you know, speaks to the fact, as I
12 said earlier, that the local Charlestown Police and
13 Rhode Island State Police could enforce Rhode Island
14 General Law on what is defined as settlement lands.
15    Q.  Okay. And anything else about what
16 "concurrent jurisdiction" implies? So -- so you
17 said that the local police, Charlestown, State
18 Police, Rhode Island State Police, are both able to
19 enforce state law on tribal land. Is there anything
20 else that's an important concept of concurrent
21 jurisdiction?
22       MS. HILTON: Objection. You can
23 answer.
24    A.  Could you clarify that question?

Page 38

1     Q.  Okay. Well, yeah. Let's see. Okay. So
2  the description you just gave of "concurrent
3  jurisdiction" is that Charlestown Police and Rhode
4  Island State Police are both able to -- authorized
5  to enforce state law on tribal lands -- or tribal
6  trust lands, right? Did I paraphrase you okay?
7     A.  As far as Rhode Island's General Law, yes.
8     Q.  Okay. So is there anything in addition to
9  that statement that those two bodies can enforce --
10 can enforce? Is there anything else about
11 concurrent jurisdiction -- are there any other law
12 enforcement agencies that can enforce state law on
13 tribal land?
14       MS. HILTON: Objection. You can
15 answer.
16    A.  I guess it would depend on how you define
17 "enforce state law." As far as prosecution, my
18 understanding is there's no mechanism for the Tribal
19 Police to prosecute within the State Court without
20 going through local law enforcement or state law
21 enforcement, although there are -- they are
22 federally recognized law enforcement and they have a
23 function within the tribal lands to enforce certain
24 laws and things that the tribe determines they need

Page 39

1  to enforce.
2     Q.  Okay. And when you say "they," you mean
3  the Tribal -- Tribal Police?
4     A.  Well, yeah. Their authority would come
5  from the tribal government. That's what I was
6  referencing.
7     Q.  Okay. So in your understanding, as you
8  understand it, are Tribal Police, Narragansett
9  Tribal Police, authorized to -- and I just mean
10 authorized by law, to enforce state law on tribal
11 lands?
12       MS. HILTON: Objection. You can
13 answer.
14    A.  I believe their authority comes from the
15 federal authority through, you know, Bureau of
16 Indian Affairs. This is my understanding of it.
17    So to say that they could enforce state
18 law, they could be the complainant or they could be
19 the witness, local law enforcement or State Police
20 would have to prosecute if you're referring to
21 "enforce state law" as prosecute in a criminal case.
22    Q.  Okay. Well, let's break it down a little
23 more then. So your understanding, can Tribal Police
24 arrest a person, let's start with any person for

Page 40

1  alleged -- as allegedly breaking a state law on
2  tribal lands?
3        MS. HILTON: Objection. You can
4  answer.
5     A.  Yes, I believe they can, and they would be
6  detaining that person until local law enforcement or
7  State Police would handle the prosecution.
8     Q.  Okay.
9     A.  My understanding is they could also go
10 through a federal -- you know, they have federal
11 recourse through federal law enforcement for certain
12 crimes. Major felonies, things of that nature where
13 they would work with the Federal Government.
14    They have assigned federal investigators
15 from the Bureau of Indian Affairs that they've
16 worked with in the past.
17    Q.  Okay. And just to sort of clarify, are
18 you saying that -- that your understanding is that
19 they could -- whether it's working with the Federal
20 Government, Tribal Police could enforce federal laws
21 on tribal land?
22    A.  That is my understanding.
23    Q.  Okay. So are they -- and then as far as
24 state laws, the first part of that question was

Page 41

1  could they arrest someone, could Tribal Police
2  arrest someone for allegedly violating a state law
3  on tribal lands and you said, yes, they could arrest
4  and detain the person and then hand them over to
5  another authority, Charlestown, for instance the
6  town, to do -- to prosecution, to local or State
7  Police I think you said to prosecute.
8      A.  That is correct.
9      Q.  Okay.  What about being able to handle
10 prosecutions through Tribal Court?  Are they -- your
11 understanding of the law, can the Tribal Police
12 arrest someone for allegedly breaking a state law on
13 tribal lands and can they arrest them and then
14 prosecute them through Tribal Court?
15         MS. HILTON:  Objection.  You answer.
16     A.  My understanding is they can only do that
17 with a tribal member on tribal land, so if the
18 defendant was a tribal member, and, again, this is
19 just my understanding of it, that they could --
20 there are some mechanism that they could arrest and
21 go through their -- their own court system, which I
22 have no knowledge that they have or have not done.
23     Q.  Okay.  So you're not aware of any instance
24 then where the tribe has carried out a full arrest

Page 42

1  and prosecution of someone for violating state law
2  on tribal land?
3      A.  I do not have knowledge of one, no.
4      Q.  Okay.  And you also don't know for a fact
5  that it hasn't happened either?
6      A.  Correct.
7      Q.  If there was a situation -- this is a
8  hypothetical so thank you for your patience.  If you
9  are confronted with a situation where a person
10 allegedly violates state law, say it's a tribal
11 member violates state law on tribal land, if both
12 the town and the tribal government, if they're both
13 interested in doing the prosecution, how -- how does
14 that get decided?
15         Does the tribe have preference over the
16 town?  Does the town have preference over the tribe?
17 Is it unclear and you just have to work it out?
18         MS. HILTON:  Objection.  You can
19 answer.
20     A.  In most of these -- in all of these
21 situations they've always, you know, deferred to the
22 local law -- law enforcement authority or the State
23 Police and we have prosecuted state crimes if, in
24 fact, tribal government -- the Tribal Police

Page 43

1  Department has a -- has a case in which they want to
2  prosecute in State Court.
3      Q.  Okay.  And if the Tribal Police tells you,
4  okay, yes, this person we believe, tribal member,
5  committed a simple assault, a misdemeanor let's say,
6  on tribal land, we want to handle it ourselves
7  through Tribal Court, would the state -- or I'm
8  sorry.  Would the town, Charlestown Police,
9  automatically say, okay, great.  Let us know if you
10 need anything or would the -- if -- if Charlestown
11 Police also wanted to handle the prosecution, how
12 would you -- how would -- how would that go?
13         MS. HILTON:  Objection.  You can
14 answer.
15     A.  I don't have knowledge that that's
16 happened, but I would encourage them to go through
17 local law enforcement or the State Police and
18 prosecute in the State Court.
19     Q.  Okay.  And so you would encourage that.
20 And why is that?  Why would you encourage that?
21     A.  It's a system that I know exists and
22 is -- has had success and, you know, they have a
23 remedy there, and I don't know that the other system
24 exists.  I've never seen a Tribal Court, and I don't

Page 44

1  have knowledge that any particular case has -- you
2  know, anyone's been through that system for a
3  criminal offense.
4      Q.  And if -- so you would encourage the
5  tribal authorities to use the state system, State
6  Court system and if the tribal authorities declined
7  and said, no, we do want to handle this through the
8  Tribal Court, we believe the system is where it
9  should be, would you accept that?
10     A.  I think some of it has to do with whether
11 it's a victimless crime or a crime with a victim.
12 If there's a victim, then it's -- you know, it's
13 even more important that they go through the state
14 system.
15         But if it's a victimless crime like a
16 trespass or a vandalism or some petty misdemeanor on
17 tribal land by a tribal member, there -- there may
18 be an avenue there for them to do some type of a --
19 a petition for -- in front of a Tribal Court, but I
20 don't have knowledge of it myself.  I've never seen
21 it in action and I don't know that one exists, to be
22 honest with you.
23     Q.  Okay.  If -- and if there's just simply a
24 roadblock, you can't agree, does Charlestown then

Page 45

1  have an authority to say, no, we really need to
2  handle this and prosecute from State Court or would
3  you just defer to the tribe in that case?
4         MS. HILTON: Objection. You can
5  answer.
6    A. Again, if there's a victim, we would -- we
7  would try to come to some agreement. If not, we'd
8  probably use the Attorney General's Office or
9  solicitors to help us, you know, put -- prosecute in
10 the proper court system.
11   Q. Okay. And when you say "the proper court
12 system," you're referring to the State Courts?
13   A. That's correct. And historically the
14 Tribal Police or members of the tribal government
15 would be witnesses, would fill out statements, would
16 testify.
17   Q. Okay. And would it be -- would there be
18 any distinction in -- in your thinking on -- based
19 on whether or not the victim or the complaining
20 witness was a tribal member or not?
21   A. Could you repeat that?
22   Q. So if -- so you said that if there was a
23 disagreement, couldn't come to an agreement, you
24 would try to work with the AG's to see if -- you

Page 46

1  know, to try to make the prosecution happen in State
2  Court. You made the distinction if there was a --
3  if it was a crime where there was a victim.
4         MS. HILTON: Objection. You can
5  answer.
6    Q. Did I phrase you correctly? Did I kind of
7  rephrase you correctly?
8    A. I'm not -- still not sure of the question.
9    Q. Okay. So the first question is making
10 sure I've got -- I'm capturing what you said
11 correctly or understanding it correctly.
12        I think you said that if there was a
13 disagreement between Charlestown Police and the
14 tribal government on whether an alleged -- an
15 alleged violator of state law should be prosecuted
16 in State Court or Tribal Court, you said that if
17 there was a victim, that would make you want to see
18 it prosecuted in State Court, right? I understood
19 that correctly?
20   A. Ultimately, the Charlestown Police or the
21 State Police would have -- to me would have final
22 say, we would try to work -- mutually work with
23 tribal authorities but if it -- if it became a, you
24 know, contentious issue and there was a state law

Page 47

1  involved, you know, either the Charlestown Police or
2  the State Police could just take charge of it and do
3  what they needed to do and enforce state law.
4    Q. Okay. And does that make it -- would you
5  make a distinction if the victim or complaining
6  witness was a tribal member or not?
7    A. If they did not want to -- to be a
8  complainant or a -- or you know, to prosecute,
9  bring charges against, you know, someone, they were
10 not going to cooperate where us, then we wouldn't --
11 we wouldn't go forward with it.
12        If they want a lawsuit within some type of
13 a tribal system because that's who they recognized
14 and they're the victim, then we -- we really
15 wouldn't have much of a case.
16   Q. Okay. So then that's -- so regardless of
17 whether the victim was a tribal member or not, you
18 would -- sort of -- respond to their intention of
19 wanting it to go through Tribal Court or State
20 Court?
21        MS. HILTON: Objection. You can
22 answer.
23   A. Again, this -- this is for, you know,
24 misdemeanors, petty misdemeanors. If this is a

Page 48

1  serious felony, you know, we're -- we're going
2  to -- we're going to take action and we're going to
3  prosecute in State Court regardless of the
4  cooperation of the mob or the Tribal Police.
5    Q. Okay. So regardless -- okay. All right.
6  Let me have one then -- let's see. Okay. So
7  internal -- I want to ask you also some of your
8  background knowledge that you've accumulated around
9  tribal governance and politics. Ready?
10        So now sort of focusing back in then on
11 Mr. Monroe's case and his complaint, have you read
12 the complaint for this -- for this lawsuit?
13   A. I have.
14   Q. Okay. About how long ago was the last
15 time you read it?
16   A. Months ago. Several months ago.
17   Q. Okay. And actually I apologize. I
18 meant -- I should have asked this at the beginning.
19 Did you -- so you didn't read -- reread the
20 complaint to prepare for this deposition today?
21   A. The complaint, no.
22   Q. Okay. What other documents did you look
23 at to prepare for today's deposition?
24   A. I did look at the police report, the